UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RICHARD DEMPSEY,
Individually and on Behalf of All Others Similar Situated,

        Plaintiffs,

  -v-                                    No.  13-CV-6883-LTS-SN

DAVID P. VIEAU et al.,

        Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Lead Plaintiff Hormuz Irani brings this action individually and on behalf of all purchasers of the securities of A123 Systems, Inc. ("A123") between February 28, 2011, and October 16, 2012 ("Plaintiffs"), against David P. Vieau ("Vieau"), David J. Prystash ("Prystash"), John R. Granara III ("Granara"), and Jason M. Forcier ("Forcier") (collectively, "Defendants") for securities fraud pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

        Before the Court is Defendants' motion to dismiss the Amended Complaint ("AC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 et seq. ("PSLRA").  The Court has considered carefully the parties' briefing, including their supplemental submissions.  For the following reasons, Defendants' motion is granted.

BACKGROUND

The parties' familiarity with the proceedings and submissions to date is assumed. This section recites only those facts relevant to the adjudication of the instant motion. Facts alleged in the AC are taken as true for the purposes of this motion practice.

A123 was principally engaged in the manufacturing of advanced rechargeable lithium-ion batteries and battery systems for electric automobiles. Plaintiffs allege that, during the Class Period, Fisker Automotive, Inc. ("Fisker"), a manufacturer of electric automobiles, was attempting to produce a battery-operated car, the Fisker Karma ("Karma"), which would be outfitted with A123 batteries. (AC ¶ 2). This lawsuit arises from allegations that Defendants misled investors as to (1) the status of A123's manufacture, testing, and shipment to Fisker of batteries that were ultimately determined to be defective (AC ¶ 4); and (2) the financial status of Fisker, which affected its ability to purchase and pay for A123 batteries (AC ¶ 3).

With respect to the first category of allegations, Plaintiffs allege that A123 had entered into a contract to produce batteries for Fisker. (AC ¶ 4.) The batteries A123 was producing were later demonstrated to be defective – "a coolant leak and leaking of electrolyte fluid" were among their defects. (Id.) Plaintiffs allege that "[t]he underlying cause of the coolant leak was observed in A123's prototype laboratory prior to [A123's] commencement of battery production for [the Fisker vehicle]" and that, in spite of these observations, Defendants continued to issue statements to the public that contradicted the facts available to them. (AC ¶ 5.)

Concerning A123's relationship with Fisker, Plaintiffs allege that, unbeknownst to investors, by the start of the Class Period, Fisker had serious financial problems, had defaulted on its obligation to commence production by February 2011, a failure that entitled the federal

Department of Energy ("DOE") to suspend funding under a loan that was essential to Fisker's ability to do business, and "was effectively insolvent." (AC ¶¶ 3, 104-105.) Plaintiffs allege that Defendants had access to non-public information concerning the problems that Fisker was experiencing because A123's Vice President and executive officer, Defendant Forcier, served on Fisker's Board of Directors during the Class Period. (See, e.g., AC ¶ 87.) Plaintiffs allege that Forcier was a member of Fisker's board from January 2010 to May 2011. (AC ¶ 20.) In addition, Forcier and Defendant Vieau attended "a Fisker Board meeting at which Fisker's loan agreement with the DOE was the principal topic of discussion." (AC ¶ 88.) That meeting, at which the board approved the DOE loan agreement, took place in March 2010. (AC ¶ 88.) Plaintiffs allege that Defendants' unique customer relationship with Fisker and its knowledge of the details of the loan agreement with the DOE meant that Defendants knew that Fisker had defaulted on its loan agreement with the DOE (AC ¶ 105, 142-43), even though Plaintiffs acknowledge that Fisker "hid the Karma's true production status from the DOE, . . . falsely claim[ing] that the Company had met the production milestone for the Karma" during a non-public March 2011 meeting with the DOE (AC ¶ 106), and that Fisker only admitted in a non-public meeting with the DOE held in June 2011, "that commercial production of the Karma had not commenced" (AC ¶ 107). Plaintiffs allege that "Defendants . . . continu[ed] to represent to A123's investors that the Company expected significant revenues from Fisker battery sales, even as Defendants began informing A123 employees of an 'unexpected' slowdown in orders from Fisker." (AC ¶ 110.) Plaintiffs allege that an engineer of A123 was told at an "all hands" meeting by Defendant Forcier that "Fisker was going to 'throttle back significantly' in receiving A123's batteries" and that this meeting took place in late August 2011 or in September 2011. (AC ¶ 110.)

By November 4, 2011, Defendants acknowledged that Fisker could not purchase enough batteries for A123 to meet its 2011 revenue forecast. (AC ¶ 116.) However, Defendants characterized Fisker's order reduction as "unexpected" and "temporary," and described A123's relationship with Fisker as remaining "strong." (AC ¶ 117.)

Battery sales to Fisker in 2012 did not materialize. (AC ¶ 130.) A123 was not able to deliver safe, workable batteries to Fisker. (AC ¶¶161-64.) A123 subsequently filed for bankruptcy. (AC ¶ 254.) Fisker's failure to meet the February 2011 milestone and the DOE's subsequent withdrawal of its funding were publicly disclosed for the first time on April 17, 2013. (AC ¶ 131.)

## DISCUSSION

Res Judicata

Defendants first contend that Plaintiffs' claims in this action are barred by res judicata because a securities class action was filed in federal court in Massachusetts by the shareholders of A123 securities in Massachusetts against A123 and its executives in 2012 and that case was dismissed in 2013 for inadequate pleading. See In re A123 System, Inc. Sec. Litig., 930 F. Supp. 2d 278 (D. Mass. 2013). Although a court typically only reviews the complaint and does not consider affirmative defenses in making the Rule 12(b)(6) determination, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a 12(b)(6) motion." Day v. Moscow, 955 F.2d 807, 811 (2d Cir.1992). In order for res judicata to apply, (1) the previous action must have involved an adjudication on the merits; (2) the previous action must have involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could

have been, raised in the prior action.  See TechnoMarine SA v. Giftports, Inc ., 758 F.3d 493, 499 (2d Cir. 2014).

Plaintiffs and Defendants dispute whether the parties in the Massachusetts litigation are identical to the parties in this case for res judicata purposes.  Plaintiffs argue that, because there is a different lead plaintiff in this case, and the putative class had not yet been certified when the earlier case was dismissed, the parties are not identical for res judicata purposes.  Additionally, Defendant Forcier, who is a party to the present litigation, was not a defendant in the Massachusetts litigation.  Defendants nonetheless argue, without citing any specific authority, that the appointment of a lead plaintiff under the PSLRA renders the lead plaintiff representative of all purchasers of A123, and that the parties are therefore identical for the purposes of the res judicata analysis.  The Court is not persuaded by Defendants' argument.  The Court finds nothing in the plain language of the Private Securities Litigation Reform Act ("PSLRA") that would preclude later litigation by an absent class member of a previously dismissed putative class action prior to certification, so long as the statute of limitations has not run.  Lead plaintiff designation does not abnegate the necessity of class certification, and it is well settled that "[n]either a proposed class action nor a rejected class action may bind nonparties."  Smith v. Bayer Corp., 131 S. Ct. 2368, 2380 (2011); see also Kalnit v. Eichler, 264 F.3d 131, 135 n.1 (2d Cir. 2001 (affirming pre-certification dismissal of section 10(b) action, stating: "The district court did not certify the class under Fed. R. Civ. P. 23.  Therefore, this opinion pertains only to [the named plaintiff] for res judicata purposes.").  Accordingly, Defendants' motion, to the extent it is premised on res judicata grounds, is denied.

Failure to Plead Securities Fraud Claims with Particularity Under 9(b) and the PSLRA

To state a claim for securities fraud pursuant to Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter, i.e., an intent to deceive or defraud; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court should "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  Watson v. Qiu, 553 F. App'x 96, 97 (2d Cir. 2014) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)).

A complaint alleging securities fraud is subject to two heightened pleading standards.  First, the complaint must satisfy Federal Rule of Civil Procedure 9(b), which requires that it "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); see also ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  A securities fraud complaint based on misstatements "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Hall v. Children's Place Retail Stores, Inc., 580 F. Supp. 2d 212, 224 (S.D.N.Y. 2008).  The PSLRA further requires that, in a securities fraud case alleging a material misrepresentation or omission, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement

is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.S. § 78u–4(b)(1) (LexisNexis 2008).  The PSLRA also requires that, in cases where a particular state of mind on the part of the defendant is an element of the cause of action, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each act or omission.  15 U.S.C. § 78u–4(b)(2); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007).  In an action brought pursuant to Section 10(b) and 10b-5, the requisite state of mind is scienter, that is, "an intent to deceive, manipulate, or defraud."  ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (internal citations and quotation marks omitted).

"To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff . . . . A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Tellabs, 551 U.S. at 322-24.  A complaint may establish a strong inference of scienter in a Section 10(b) or Rule 10b-5 action by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  ATSI Commc'ns., 493 F.3d at 99.  "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater."  Kalnit, 264 F.3d at 142.  In order to provide strong circumstantial evidence of

recklessness, the complaint must allege "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Id. at 142.

Plaintiffs' Section 10(b) and Rule 10b-5 claims against Defendants are premised on allegedly false statements regarding the quality of A123's production of batteries and statements regarding its business prospects insofar as those prospects were intertwined with Fisker's prospects. Plaintiffs further allege that Defendants' financial disclosures did not comply with Generally Accepted Accounting Principles ("GAAP"). Defendants argue that the Amended Complaint should be dismissed because Plaintiffs fail to meet the pleading requirements with respect to three of the elements of a securities fraud claim—(1) a material misrepresentation or omission; (2) scienter; and (3) loss causation.

Fraud Claims Relating to Battery Defects

Plaintiffs allege that "A123's batteries were produced defectively utilizing a flawed manufacturing process and pursuant to an inadequate [validation] plan" (AC ¶ 146), and that certain statements made during the Class Period with respect to batteries that were later found defective due to coolant and electrolyte leaks were therefore fraudulent. In support of their assertion, Plaintiffs disparage the development, sufficiency, and funding of A123's validation plan (AC ¶ 4, 141-44) without specifying what a proper validation plan would have entailed or how a different validation plan would have prevented the battery defects that were later discovered. Plaintiffs also proffer that the "[t]he underlying cause" of one of the batteries' defects was "observed in A123's prototype laboratory prior to [A123's] commencement of battery production for the Karma" and that "upper management," including "Dave Vieau," knew

of some of the potential problems related to the batteries and retaliated against employees who informed their superiors that the batteries would not work.  (AC ¶ 150.)

The Complaint fails, however, to identify any allegedly false statements concerning the validation program or the functioning of the batteries.  The statements that are identified in the Complaint concern the features and intended functions of the batteries (e..g., AC ¶ 145).  The Complaint contains no factual allegations demonstrating the falsity of the statements, and thus is insufficient to meet the stringent pleading requirements of Rule 9(b) and the PSLRA.  Plaintiffs' securities fraud claims with regard to the battery defects are therefore dismissed to the extent they relate to statements regarding A123's production of batteries.

Fraud Claims Relating to Business with Fisker

The thrust of Plaintiffs' claims regarding A123's business with Fisker is that A123 made positive statements regarding its prospects for increasing and/or doing substantial business with Fisker, which was its largest customer, when A123 knew that Fisker faced "effective insolvency" stemming from its failure to meet a production milestone on which DOE loan funding was conditioned, and from Fisker's lack of other funding sources.  Defendants' knowledge of Fisker's financial woes and production shortfalls was allegedly derived entirely from Defendant Forcier's membership on Fisker's board, including his participation in the board meeting at which the terms of the DOE loan agreement were approved.  Plaintiffs cite congressional testimony by Fisker's former Chief Operating Officer that Fisker's board members "were informed regarding the financial condition of Fisker" (AC ¶ 317), and Delaware law provisions under which directors are entitled to access to a company's books, records and management information (id.), as the basis for their allegations that all of the Defendants were aware of details of Fisker's business affairs, ranging from the reasons for and details of certain

venture capital funding received beginning in 2009, to alleged non-public "questionable" representations to the DOE prior to the issuance of the loan, to the specifics of the missed milestone, to the alleged maintenance of three sets of projections - internal, for investors, and for regulators, to the proposition that "absent the DOE Loan, Fisker was effectively insolvent, threatening its ability to pay A123 for the batteries and/or fulfill the Supply Agreement."  (Id.) There are no specific allegations that Forcier or any of the other Defendants was given any of this information at any time, or that any of them received it in any other capacity.  Plaintiffs nonetheless assert that Defendants knew or should have known that Fisker would eventually become "effectively insolvent," and that, therefore, statements made during the Class Period in which Defendants expressed an expectation that Fisker would purchase A123 batteries and contribute to A123's earnings were fraudulent.

As explained above, in order to determine whether a plaintiff has alleged facts giving rise to the requisite "strong inference" of scienter, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and the pleadings are sufficient to survive a motion to dismiss only if the inferences favoring the plaintiff are "as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 322-24.

Plaintiffs argue that Defendants had motive to commit fraud because Defendants wanted to artificially inflate the value of their A123 stock.  (AC ¶¶ 322-33.)  However, Plaintiffs' theory is supported neither by the law nor the facts.  Defendants Prystash and Granara sold no A123 shares during the class period, undermining Plaintiffs' theory that all defendants participated in a scheme to defraud investors.  See In re Glenayre Techs. Sec. Litig., 98 Civ. 8252 (HB), 1998 WL 915907, at * 4 (S.D.N.Y. Dec. 30, 1998) (inference of scienter fatally

undermined by fact that high-ranking corporate officers sold no shares during class period). Additionally, Defendant Vieau and Forcier's stock sales were made pursuant to a Rule 10b5-1 plan, and the mere fact that stock shares were traded pursuant to a Rule 10b5-1 trading "do[es] not give rise to a strong inference of scienter." In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014).  In order to establish scienter based on stock sales, plaintiffs must plead facts establishing that the sales were unusual or suspicious in amount or timing.  See, e.g., Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011).  Plaintiffs have pleaded none, and the Court, accordingly, finds Plaintiffs' allegations insufficient to establish motive.

Plaintiffs' assertion that Defendant's statements evidence conscious misbehavior or recklessness rests on the same factual foundation as their allegations of falsity, and depends on the following chain of inferences: (1) Defendants knew or should have known the details of Fisker's loan arrangement with the DOE; (2) Defendants knew or should have known that Fisker depended heavily on the DOE loan; (3) Defendants knew or should have known that Fisker failed to commence production of the Karma in February 2011, and thus failed to meet a milestone established in the DOE's loan arrangement with Fisker; (4) Defendants knew or should have known that failure to meet the February 2011 milestone would lead to the DOE's suspension of the loan; and (5) Defendants knew or should have known that Fisker would be unable to secure other sources of funding in order to produce the Karma vehicle.

The strength of Plaintiffs' inference of scienter is limited by several factors.  The bedrock foundation of Plaintiffs' thesis – that Defendants must have known that Fisker was in mortal peril when it missed the February 2011 production milestone – rests on the unsupported assumptions that the particular production milestone was featured so prominently in the review of the agreement's provisions at the March 2010 board meeting that Forcier and Vieau would

have recognized the failure contemporaneously and that Forcier, by reason of his board membership, understood that Fisker had no other viable sources of revenue.  Only under such circumstances would Defendants' late February 2011 positive comments to the press and analysts about Fisker's sales prospects and A123's statements in is March 2011 Form 10-K report about its long-term revenue expectations from the Fisker supply contract (see AC ¶¶ 165-168) be indicative of conscious misbehavior or recklessness.  Forcier's May 2011 departure from Fisker's board undermines any inference that Defendants had specific information regarding the terms, likely length or impact of the DOE's June 2011 loan payment suspension, and so statements in the summer of 2011 regarding A123's battery production value are no more indicative of conscious misbehavior or recklessness than they are of expectations that Fisker would produce cars incorporating A123's batteries.  Similarly, statements characterizing Fisker's later delivery cutbacks as temporary or surprising are more consistent with lack of insight into Fisker's financial affairs than with conscious misbehavior or recklessness.

The final two inferences in Plaintiffs' chain of logic would have been entirely speculative during the Class Period.  Fisker had, in the past, received financing from a venture capital firm at a time when its prospects may have looked grim to an outside observer, and a partner of the venture capital firm chaired Fisker's board until early 2012.  (AC ¶ 76.)  Nothing in the Complaint demonstrates that Fisker's business was so plainly unsalvageable that Defendants should have known that A123 would never be able to make, or collect on, deliveries to Fisker.  Rather, the nonculpable inference that Defendants believed that Fisker would eventually recover and contribute to A123's revenue is more compelling than the alternative version asserted by Plaintiffs.  See Tellabs, 551 U.S. at 322-24.

Because Plaintiffs have not pleaded facts supporting a "strong inference" of conscious misbehavior or recklessness, their securities fraud claim with respect to statements regarding A123's business with Fisker is dismissed.

Claims Regarding Accounting Noncompliance

Plaintiffs additionally assert a securities fraud claim based on A123's alleged failure to report an "other than temporary impairment" ("OTTI") of its Fisker investment (AC 298-299) and A123's alleged failure to disclose an impairment in the value of the battery inventory as of the end of 2011 (AC ¶ 307ff), in violation of GAAP.

According to Plaintiffs, Fisker's failure to launch commercial production of the Karma in February 2011, followed by the DOE's suspension of its loan disbursements to Fisker in June 2011, signified an OTTI of A123's investment in Fisker that necessitated disclosure. (AC 298.) "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000). However, such allegations "coupled with evidence of 'corresponding fraudulent intent'" may be sufficient to state a securities law violation. Id. (internal citation omitted).

Like the other allegations the Court has reviewed and deemed insufficient, the facts alleged in connection with the supposed GAAP violation fail to provide a sufficient basis for the requisite inference of fraudulent intent. Because Fisker had continued to draw funds on the DOE loan arrangements in the months prior to the suspension of the DOE loan in June 2011 and Fisker had been able to secure loans from a venture capital firm in 2009, it is more likely that Defendants believed that Fisker would be able to secure the necessary funds to continue production of the Karma and uphold its contract with A123 and that, therefore, there was no

OTTI to report.  Consequently, Plaintiffs have failed to allege facts supporting a strong inference of scienter with respect to the alleged accounting violations.  See Tellabs, 551 U.S. at 322-24.

With regard to the allegation that Defendants failed to disclose an OTTI in the value of the battery inventory, Plaintiffs have not pleaded sufficient facts to demonstrate the falsity of Defendants' statement.  A statement regarding OTTI is an opinion, not a matter of objective fact.  MHC Mut. Conversion DFund, L.P. v. United W. Bankcorp. Inc., 913 F Supp. 2d 1026, 1035 (D. Colo. 2012); accord Fait v. Regions Fin. Corp., 655 F.3d 105, 110 (2d Cir. 2011) (accounting judgments that "depend on management's determination of the 'fair value' of the assets'" are matters of opinion).  To state a claim based on an allegedly false opinions, plaintiffs must plead both their objective falsity and their subjective falsity.  See Fait, 655 F.3d at 112; see also Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund, 135 S. Ct. 1318 (2015) (an opinion may give rise to Section 11 liability when the defendant (1) does not genuinely believe the opinion; or (2) omits a material fact regarding the basis for defendant's opinion that renders it misleading).  In order to allege subjective falsity, plaintiffs must allege that the speaker did not truly believe the opinion given.  Id. at 113.  Because Plaintiffs have failed to allege that Defendants did not honestly believe the opinion given, they have failed to demonstrate falsity of the opinion.  The claim, insofar as it is based on Defendants' failure to disclose an OTTI in the value of the battery inventory, is therefore dismissed.

Section 20(a) Claim

Section 20(a) of the Securities Exchange Act creates a cause of action against "control persons" of those engaged in the primary securities fraud. Because Plaintiffs have failed to adequately plead a predicate Exchange Act violation under Section 10(b) and Rule 10b-5, the Court dismisses Plaintiffs' Section 20(a) claim.

<u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendants' motion to dismiss the Amended Complaint in its entirety. The Clerk of Court is requested to enter judgment in favor of Defendants and to close this case.

This Order resolves docket entry no. 53.

SO ORDERED.

Dated: New York, New York
September 8, 2015

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge